IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QATAR NATIONAL BANK (Q.P.S.C.)<br>P.O. Box 1000<br>Doha, Qatar,<br><br>Petitioner,<br><br>v.<br><br>THE REPUBLIC OF SOUTH SUDAN<br>c/o<br>Hon. Amb. Monday Simaya K. Kumba<br>Minister of Foreign Affairs and International Cooperation<br>Ministry of Foreign Affairs and International Cooperation<br>Ministers Complex<br>VH3P+49H<br>Juba, Republic of South Sudan,<br><br>and<br><br>BANK OF SOUTH SUDAN,<br>The Governor's Office<br>P.O. Box 136<br>Juba Market Area,<br>Juba, Republic of South Sudan,<br><br>Respondents. | Civil Action No. 25-cv-1870 |

## PETITION TO ENFORCE ICSID ARBITRAL AWARD

1. Petitioner Qatar National Bank (Q.P.S.C.) ("Petitioner" or "QNB") respectfully requests enforcement of an arbitration award pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention").

2. The arbitration award (the "Award") was rendered in favor of Petitioner and against the Republic of South Sudan ("South Sudan") and the Bank of South Sudan ("BSS") (together, the

1

"Respondents") on May 7, 2024, following an arbitration (the "Arbitration") before the International Centre for the Settlement of Investment Disputes ("ICSID"). A certified copy of the Award is attached as Exhibit 1 to the Declaration of Jovana Crncevic ("Crncevic Decl.") which is concurrently filed herewith. The Tribunal's Decision on Jurisdiction and Liability, dated January 5, 2024 (the "Liability Award") is attached to the Award and incorporated by reference therein. (*See* Award ¶ 1.)

3.  In the Award, the Tribunal rejected all of Respondents' jurisdictional objections, found that Respondents had breached the Facility Agreement dated April 5, 2018 (the "Facility Agreement") between QNB, South Sudan, and BSS (Crncevic Decl. Ex. 2), and awarded QNB monetary damages as described herein.

4.  To date, Respondents have not satisfied any portion of the Award.

5.  Respondents have not sought to annul the Award pursuant to Article 52 of the ICSID Convention and Rules 50 and 52-55 of the ICSID Arbitration Rules, and the 120-day deadline for seeking annulment under those provisions has also expired. Nor have Respondents sought to stay enforcement of the Award pursuant to Article 50, 51, or 52 of the ICSID Convention or Rule 54 of the ICSID Arbitration Rules. (*See infra* ¶ 33.)

6.  Pursuant to Article 54(1) of the ICSID Convention and 22 U.S.C. § 1650a, an arbitral award issued under the ICSID Convention is not subject to collateral attack—in essence, a re-argument of aspects of the Arbitration, its proceedings or the Award—and must be enforced and given the same full faith and credit as if it were a final judgment of a court in the United States.

7.  Accordingly, Petitioner requests that this Court enter an Order: (1) enforcing the Award in the same manner as a final judgment issued by this Court; (2) entering judgment in

Petitioner's favor and against Respondents in the amounts specified in the Award plus post-award interest; and (3) awarding QNB such other and further relief as this Court may find just and proper.

## THE PARTIES

8. Petitioner QNB is a company incorporated under the laws of the State of Qatar, and part of the QNB Group, which is headquartered in Doha, Qatar.[1] Petitioner QNB provides banking and financial services, including to corporations and governments with operations in Africa, Europe and Asia, among other jurisdictions.

9. Respondent South Sudan is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603.[2]

10. Respondent BSS was established as the Central Bank of South Sudan in 2011 and, as an agency or instrumentality of a foreign state, constitutes a "foreign state" within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

12. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) because both Respondents are foreign states that are not entitled to sovereign immunity for three separate reasons, as set out in 28 U.S.C. § 1605:

---

[1] Qatar is a Contracting State to the ICSID Convention, which it signed on September 30, 2010. About ICSID, Member States, ICSID, https://icsid.worldbank.org/about/member-states/database-of-member-states (last visited May 28, 2025). The Convention entered into force for Qatar on January 20, 2011. *Id.* QNB is therefore a "national" of a "Contracting State" within the meaning of Articles 25(2)(b) and 36(1) of the ICSID Convention.

[2] South Sudan is a Contracting State to the ICSID Convention, which it signed and ratified on April 18, 2012. About ICSID, Member States, ICSID, https://icsid.worldbank.org/about/member-states/database-of-member-states (last visited May 28, 2025). The Convention entered into force for South Sudan on May 18, 2012. *Id.*

a. First, Respondents have "irrevocably and unconditionally . . . waive[d] and agree[d] not to claim any sovereign or other immunity from the jurisdiction of the English courts or the courts of any other jurisdiction in relation to the recognition of" an arbitration award arising out of the Facility Agreement, and further "agree[d] to ensure that no such claim is made on [their] behalf,", and are therefore not entitled to immunity under 28 U.S.C. § 1605(a)(1). (Facility Agreement § 40.5 (Crncevic Decl., Ex 2).)

b. Second, in addition to their explicit contractual waiver, Respondents have impliedly waived sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1) by agreeing to the ICSID Convention. *See Pezold v. Republic of Zimbabwe*, 2023 WL 5547912, at *3 (D.D.C. Aug. 9, 2023) (noting that courts "have held that the 'waiver exception' applies in ICSID enforcement actions"), *aff'd sub nom. von Pezold v. Republic of Zimbabwe*, 2024 WL 4763943 (D.C. Cir. Nov. 13, 2024); *see also ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 7 (D.D.C. 2022) (finding the State "implicitly waived its sovereign immunity with respect to suits to recognize and enforce ICSID awards by becoming a Contracting State to the ICSID Convention").

c. Third, pursuant to 28 U.S.C. § 1605(a)(6), Respondents are not immune from suit because this action seeks to enforce an award governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards. *See Pezold*, 2023 WL 5547912, at *3 ("Courts, including this one, have consistently 'held that the FSIA's arbitration exception confers subject matter jurisdiction over petitions to enforce ICSID

awards.'") (quoting *Micula v. Government of Romania*, 404 F. Supp. 3d 265, 277 (D.D.C. 2019), *aff'd*, 805 Fed. Appx. 1 (Mem) (D.C. Cir. 2020)).

13. This Court has personal jurisdiction over Respondents pursuant to 28 U.S.C. § 1330(b), where Petitioner is making service in accordance with 28 U.S.C. § 1608.

14. Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## FACTUAL BACKGROUND

### I. Summary of the Underlying Dispute

15. The underlying dispute between the Parties arose out of Respondents' failure to reimburse the credit facilities provided by Petitioner. Shortly after obtaining independence in 2011, South Sudan, through BSS, engaged with QNB to provide credit facilities with which businesses that were approved by the government would finance essential imports, including specific commodities to aid South Sudan's development such as food and agricultural products, pharmaceuticals, construction materials and refined oil products. (Liability Award ¶ 54.) This credit facility was increased and renewed thereafter. (*Id.* ¶¶ 55-64.)

16. In May 2015, BSS defaulted on payment obligations it had assumed in connection with the credit facilities provided by Petitioner. As such, Petitioner and BSS entered into a restructuring agreement on February 3, 2016 for the repayment of BSS's outstanding obligations (the "2016 Agreement"). (*Id.* ¶ 63.)

17. On April 5, 2018, Petitioner entered into an agreement with South Sudan and BSS to restructure the debt owed to QNB and refinance obligations under the 2016 Agreement as well

as to increase lending to South Sudan. This was done by way of the Facility Agreement which was executed by South Sudan as borrower and BSS as guarantor. (*Id.* ¶ 64.)

18. Under the Facility Agreement, Petitioner agreed to make available to South Sudan a term loan facility of US$700 million. (*Id.*) Such amounts were to be used for the purpose of refinancing credit given for the acquisition of goods to aid South Sudan's development, as well as to support the management of the balance of payments of South Sudan. (*Id.* ¶ 198.) Under the Facility Agreement and its Addendum No. 1, the repayment of the amounts provided to South Sudan was anticipated to be spread over a 15-year period, starting March 31, 2019. (*Id.* ¶¶ 65, 203.)

19. On January 21, 2019, South Sudan submitted a "Utilisation Request" (as defined in the Facility Agreement) to Petitioner for a drawdown of the total loan facility amount of US$700 million.[3] (*Id.* ¶ 77.)

20. On February 18, 2019, Petitioner transferred to the Ministry of Finance and Economic Planning of South Sudan the amount of US$ 659,814,830.070. (*Id.*)

21. Respondents "failed to pay the first and subsequent instalments due from 31 March 2019, pursuant to the [Facility Agreement]." (*Id.* ¶ 305.) On July 26, 2019, QNB wrote to the Ministry of Finance and Planning of South Sudan, copying BSS, declaring a breach of the Facility Agreement and demanding immediate repayment of all sums due under the Agreement. (*Id.*) Thereafter, Petitioner wrote repeatedly to the Respondents demanding immediate repayment of the total outstanding amount under the Facility Agreement. (*Id.*)

---

[3] Clause 1.1 of the Facility Agreement defines Utilisation Request as "a notice substantially in the form set out in Schedule 3 (Form of Utilisation Request)," and those Requests were the primary mechanism by which South Sudan could borrow amounts under the Facility Agreement. Specifically, pursuant to Clause 5.1 of the Facility Agreement, South Sudan could "borrow a Loan by delivery to [QNB] of a duly completed Utilisation Request not later than the Specified Time."

## II. The Arbitration Agreement

22. QNB and Respondents consented to arbitration under Clause 40.3(a) of the Facility Agreement, which provides as follows:

> …any dispute, claim, difference or controversy arising out of, relating to or having any connection with this Agreement, including any dispute as to its existence, validity, interpretation, performance, breach or termination or the consequences of its nullity and any dispute relating to any non-contractual obligations arising out of or in connection with it (for the purpose of this Clause 40, a Dispute), shall be referred to and finally resolved by arbitration under the Arbitration Rules of the International Centre for Settlement of Investment Disputes (ICSID) by three arbitrators appointed in accordance with such Arbitration Rules.

(Facility Agreement § 40.3(a); Liability Award, ¶ 255.)

23. As such, the Parties agreed to submit any dispute arising out of, relating to or having any connection with the Facility Agreement to arbitration under the ICSID Convention. (Liability Award ¶ 266.)

## III. The Arbitration

24. On September 24, 2020, QNB commenced the Arbitration against South Sudan and BSS, seeking recovery of its losses as a result of the breach of the Facility Agreement, including payment of the sums due under the Facility Agreement, together with pre-award and post-award interest and costs. (Liability Award, ¶ 14.) South Sudan and BSS were represented by counsel and actively participated in the Arbitration.

25. On October 7, 2020, the Secretary-General of ICSID registered the Request in accordance with Article 36(3) of the ICSID Convention. (*Id*. ¶ 15.)

26. On March 24, 2021, the Tribunal was constituted in accordance with ICSID Arbitration Rule 6. The Tribunal was comprised of Dr. Ucheora Onwuamaegbu (President), Mr.

7

Peter Rees KC (Petitioner's appointee), and Professor Hélène Ruiz Fabri (Respondents' appointee).  (*Id.* ¶ 23.)

27. On June 9, 2021, Respondents filed a Request for Bifurcation, which was denied by the Tribunal on July 29, 2021.  (*Id.* ¶¶ 26, 27.)

28. The Tribunal conducted a hearing on jurisdiction and merits from January 17, 2023, to January 19, 2023, in London, England.  (*Id.* ¶ 40.)

## IV. The Award

29. On January 5, 2024, the Tribunal rendered the Liability Award, and on May 7, 2024, it rendered the Award.  In summary, the Tribunal found that it had jurisdiction to hear the dispute in respect of both South Sudan and BSS, and found that South Sudan and BSS breached the Facility Agreement and are liable to compensate QNB, with compensation to be calculated in accordance with the provisions of the Facility Agreement.  (*Id.* ¶¶ 206-07, 277, 279, 312-13.)  On the basis of those findings, the Tribunal ordered South Sudan and BSS, jointly and severally, to pay QNB:

   a. USD 1,021,282,210, being the amount due under the Facility Agreement as of May 5, 2024, comprising:

      i. USD 659,814,830 (principal);

      ii. USD 432,285,896 (accrued interest); and

      iii. USD 300,000 (Management Fee); less

      iv. USD 71,118,516 (repayments made to date);

   b. Post-Award interest on the payment to be made under (a) above of 6% + 2% + USD 3-month LIBOR (as applicable on December 27, 2023, i.e., 5.60975%), as calculated in accordance with the Parties' agreed calculation methods in

8

     Appendix 2 to the Award, such interest being payable from the date of dispatch of the Award up to the payment of the Award;

   c. GBP 999,329.78 in respect of the QNB's cost of representation; and

   d. USD 266,427.68, the share of the costs paid by QNB towards the costs of ICSID and of the Tribunal.

(Award, ¶ 55.)

## LEGAL FRAMEWORK

  30. Pursuant to Article 54 of the ICSID Convention, Contracting States must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." The ICSID Convention further provides that a Contracting State "with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id.*

  31. The United States is a Contracting State to the ICSID Convention and is, therefore, obligated to recognize the Award as if it were a final judgment of a court in the United States. Pursuant to 22 U.S.C. § 1650a, an ICSID Convention award is given "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."

  32. An arbitral award issued against a foreign state under the ICSID Convention may be enforced through a plenary action in federal court in compliance with the requirements for commencing a civil action under the Federal Rules of Civil Procedure, and with the personal jurisdiction, service and venue requirements of the FSIA. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117-20 (2d Cir. 2017).

9

33. Awards issued pursuant to the ICSID Convention are not subject to collateral attack, or re-argument of aspects of the Arbitration, its proceedings or the Award, in enforcement proceedings pursuant to 22 U.S.C. § 1650a. Contracting States' "courts are thus not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular Para Relactiones Exteriores*, 87 F.4th 510, 515 (D.C. Cir. 2023) (citation omitted); *Mobil Cerro*, 863 F.3d at 102 (same); *see OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *4 (D.D.C. May 21, 2019) (quoting *Mobil Cerro*, 863 F.3d at 102). The ICSID Convention therefore "reflects an expectation that the courts of a member nation will treat the award as final." *Valores Mundiales, S.L.*, 87 F.4th at 518 (quoting *Mobil Cerro*, 863 F.3d at 102); *see also* ICSID Convention, arts. 53(1), 54(1). As such, district courts enforce ICSID awards without allowing substantive challenges to enforcement of these awards. *See e.g.*, *Valores Mundiales, S.L.*, 87 F.4th at 518 ("[B]oth the Convention and its implementing legislation strictly limit a federal court's authority to review an ICSID award."); *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019) ("The role of the courts of the member-states, in contrast, is limited to the 'recognition or enforcement' of an award. This is no accident. The Convention's aim is to streamline the enforcement of authenticated ICSID arbitral awards, and thus, under the Convention's terms, member-states' courts are generally not 'permitted to examine an ICSID award's merits.'") (citations omitted) (quoting *Mobil Cerro*, 863 F.3d at 102).

## CLAIM FOR RELIEF

### (Enforcement of the Award Under 22 U.S.C. § 1650a)

34. Petitioner repeats and re-alleges paragraphs 1 through 33 as if fully set forth herein.

35. ICSID Convention awards are subject to automatic enforcement in the United States pursuant to 22 U.S.C. § 1650a(a), which provides that "[a]n award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."

36. There are no grounds for this Court to refuse the recognition and enforcement of the Award, because the award is "binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention," and the United States, as a contracting state, "shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in" the United States. *See* ICSID Convention, arts. 53(1), 54(1).

37. Accordingly, Petitioner is entitled to an Order (1) enforcing the Award in the same manner as a final judgment issued by this Court, and (2) entering judgment in favor of Petitioner and against Respondents in accordance with the relief stated in the Award.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner QNB respectfully requests that the Court enter an Order:

a) Enforcing the Award against South Sudan and BSS in the same manner as if the Award were a final judgment of this Court;

b) Entering judgment against South Sudan and BSS, and in favor of QNB, in the amount of:

    i. USD 1,021,282,210, the amount due under the Facility Agreement as of May 5, 2024;

    ii. Post-Award interest on sums listed in (i) above, at the rate of 6% + 2% + USD 3-month LIBOR (as applicable on December 27, 2023, i.e. 5.60975%), from the date of the Award until payment of the Award (which includes post-judgment interest following judgment from this Court);

    iii. GBP 999,329.78 in legal costs; and

    iv. USD 266,427.68 in arbitration costs;

c) Granting Petitioner its costs and expenses, including reasonable attorneys' fees, incurred in connection with this proceeding; and

d) Granting Petitioner QNB such other and further relief as this Court deems just and proper.

|  |  |
|---|---|
| Dated: June 13, 2025 | Respectfully submitted, |

By:   */s/ Floriane Lavaud*
    Floriane Lavaud, D.D.C. Bar No. NY0600
    Jovana Crncevic, D.D.C. Bar No. NY0583
    Alexander Haden, D.D.C. Bar No. 90022850
    WITHERS BERGMAN LLP
    430 Park Avenue
    New York, New York 10022
    (212) 848-9800
    floriane.lavaud@withersworldwide.com
    jovana.crncevic@withersworldwide.com
    alex.haden@withersworldwide.com
    *Counsel for Petitioner Qatar National Bank (Q.P.S.C.)*